ROCCO CORBO, RESPONDENT, v. EAST ORANGE AND AMPERE LAND COMPANY, A CORPORATION, APPELLANT.

Submitted June 20. 1914—Decided November 16, 1914.

1. Whether or not a trial judge lays down a correct rule of law as applicable to the facts of a case in his charge to the jury, a court of appeals is not called upon to decide, when no objection appears in the record with reference to the charge of the court.
2. A motion to nonsuit is properly denied when the evidence shows that the plaintiff is entitled to damages, nominal or substantial.
3. Questions put to a witness as to the contents of a deed, are properly overruled when they amount to an attempt to introduce secondary evidence of the contents of a writing without laying a proper foundation therefor.
4. Where defendant was the upper and plaintiff the lower riparian owner, a question as to whether improvements erected in a district in which plaintiff's land was situate tended to prevent the natural flow of the water from the highland down through the district was properly overruled, the question at issue being one between the plaintiff and defendant, not involving conditions for which third parties were responsible.

---

On appeal from the Supreme Court.

For the appellant, *William T. Van Der Lippe* and *Lum, Tamblyn & Colyer.*

For the respondent, *Peirce & Hoover.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. Plaintiff owned four contiguous city lots lying east of Bloomfield avenue, in the city of Newark, in what is known as the Silver Lake section. The defendant owned a large tract of land lying west of Bloomfield avenue. A natural water course, draining an area of about four hundred and fifty acres, flowed through the lands of the defendant, and, passing through a culvert under Bloomfield avenue, flowed through the Silver Lake section on the east of Bloomfield avenue, running through and over plaintiff's lots in its course. In the Silver Lake section the land was low and marshy, and the stream, after leaving the culvert on the east side of Bloomfield avenue, seeped over and through the section in many little streams.

Plaintiff's predecessor in title, who owned two hundred and thirty lots in the Silver Lake section, including the four lots in question, which he subsequently conveyed to plaintiff, undertook to develop the Silver Lake basin, and to that end dug a ditch five feet wide and five feet deep, into which the surface water coming under Bloomfield avenue was diverted. The ditch, in a part of its course, ran along one side of the lots in question, and then, making a right angle turn, ran along the rear of the lots. Of the five feet of the width of the ditch, two and one-half feet lay on the lots in question, and the other two and one-half feet lay on the lots adjoining—that is, the boundary line of the lots was the middle line of the ditch.

The section developed; streets were opened; houses were built; and the water which had formerly spread over and flowed through the lake bottom was of necessity confined to the artificial ditch.

It was defendant's contention that at and immediately prior to the time of the alleged wrong for which plaintiff's

action was brought, the water, which had formerly flowed through the stream on its land, and which had freely drained through the culvert and into and over the Silver Lake basin, was obstructed and backed up on its land, and did not flow off its property as freely as it had been wont to do prior to the time the ditch was dug on the easterly side of Bloomfield avenue; that it was entitled to have this water drain off its land on to the land east of Bloomfield avenue, as freely and to the same extent as it had done prior to the changes which had been made in the Silver Lake section; that the ditch was not adequate for that purpose and that the ditch had, moreover, become obstructed. Accordingly, the defendant caused the ditch to be cleaned out and widened it throughout its entire length.

The complaint contains three counts. The first alleges damages to have been suffered by the plaintiff by reason of an increased flow of water over his lands. The second, that defendant entered the premises of the plaintiff and then and there dug out a large quantity of his land, of the value of $1,000, and took and carried away the same and converted and disposed thereof to its own use. The third, that defendant entered the premises of the plaintiff, and with feet, in walking, trod down, tramped upon, consumed and spoiled the grass, shrubbage and land of the plaintiff.

Defendant, in its answer, denied the averments of the complaint, and, in justification, pleaded that, without breach of the peace, it entered upon the plaintiff's lands, dug and cleaned out the bed and channel of the stream sufficiently for the waters to flow freely and naturally down the same.

The case was tried at the Essex Circuit, and a verdict was rendered and judgment entered against the defendant for $329.40; from which judgment the defendant appealed.

The court charged the jury that the measure of damages, if the plaintiff was entitled to recover, would be the difference between the value of the lots immediately before and immediately after the damage was done. This formula was taken from the language of the charge of the trial court in *Manda v. Orange*, 77 *N. J. L.* 285, as set forth in the opinion of Mr.

Justice Swayze in the Supreme Court (at *p.* 286). The rule thus laid down in Manda *v.* Orange appears to have been applicable to the facts of that case; and, likewise, the rule laid down by the trial judge in his charge to the jury in the case at bar appears to be applicable to the facts of this case. But, whether so or not, is a question we are not called upon to decide, because no objection appears in the record with reference to the charge of the court.

The motion to nonsuit as to all the counts was properly denied; as to the first, because the evidence showed that the plaintiff was entitled at least to nominal damages; as to the second, because the plaintiff was entitled to substantial damages; as to the third, because the plaintiff was entitled to nominal damages.

Appellant objected to the overruling of questions put to the witness Maioram as to the contents of a deed. Upon elementary principles the judge was right in excluding the evidence. The instrument speaks for itself. The questions were properly overruled, as they amounted to an attempt to introduce secondary evidence of the contents of a writing without laying a proper foundation therefor. *Cumberland Mutual Fire Insurance Co.* v. *Giltinan,* 48 *N. J. L.* 495.

The judge also overruled the question as to whether improvements erected on the Silver Lake district (in which plaintiff's land was situate) tended to prevent the natural flow of water from the highland down through the district. The objection to the question was, that plaintiff could not be charged with improvements made by others in the locality. We think the ruling was right. The defendant was the upper and the plaintiff the lower riparian owner, and the question at issue, as to damages resulting from an overflow on the latter's land, was one between the plaintiff and defendant, not involving conditions for which third parties were responsible.

The judge also overruled questions as to the observation of a witness of the flow of water in and after storms. The ruling is objected to. The court ruled that the examination was improper, as the only permissible question on that head was,

whether or not the ditch in controversy would carry off the waters to the same extent that they were carried off by the natural stream prior to the building of the ditch. Appellant contends that this limitation ignores the fact that the natural stream overflowed in times of storm and that the highlands drained on to the lowlands, and that the ditch should have been made adequate to carry, not only the waters which flowed through the natural bed of the stream, but all the waters which drained, flowed and seeped from the Silver Lake bottom land, to the same extent, and as freely, as it had drained off prior to the digging of the ditch. We think the judge was right, because the carrying off of waters to the same extent that they were carried off by the natural stream, included storm periods as well as droughts.

Finding no error in the record, the judgment of the court below will be affirmed

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, BOGERT, VREDENBURGH, HEPPENHEIMER, WILLIAMS, JJ. 14.

*For reversal*—None.